# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

HAKEEM C. HERBERT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 JE 0001**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 21-CR-156

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, for Plaintiff-Appellee and

*Atty. Adam M. Martello*, for Defendant-Appellant.

Dated: December 11, 2023

**D'APOLITO, P.J.**

**{¶1}** Appellant, Hakeem C. Herbert, appeals his conviction by the Jefferson County Court of Common Pleas for one count of possession of drugs (methamphetamine in excess of 300 grams) in violation of R.C. 2925.11(A), (C)(1)(e), a felony of the first degree, with a major drug offender specification pursuant to R.C. 2929.01 and a forfeiture specification as to $9,600, following a jury trial. Appellant was acquitted of attempted possession of drugs in violation R.C. 2923.02(A), a felony of the second degree, having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, and tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Appellant also appeals the judgment entry overruling his motion to suppress.

**{¶2}** With respect to his conviction, Appellant argues it is against the manifest weight of the evidence; he received ineffective assistance of counsel; and he suffered prejudice as a result of the trial court's decisions in both admitting and excluding certain evidence. In his motion to suppress, Appellant challenges the warrantless search of a package shipped via United Parcel Service ("UPS") sent by a fictitious sender and sent to a fictitious recipient. The package was flagged as suspicious by UPS, and law enforcement officers assisted UPS employees in opening the interior packaging. For the following reasons, the judgment entry overruling Appellant's motion to suppress and his conviction are affirmed.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** Appellant's conviction was the result of an investigation into the import and trafficking of drugs in Jefferson County conducted by the Jefferson County Drug Task Force ("JCDTF"). The investigation began in April of 2021, when United States Postal Service Inspector Byron Green ("Green") identified two suspicious packages being shipped from California to Steubenville, Ohio, which did not include a proper name with the sender's address or the recipient's address. The recipient's address – 1096 Claire Avenue – was owned by Appellant.

**{¶4}** Green employed a drug-sniffing dog, and the dog alerted to the presence of narcotics in both packages. Based on that alert, a search warrant was issued. Upon

opening the packages, Green discovered plastic-wrapped bundles of methamphetamine surrounded by dryer sheets and bubble wrap. The packages contained 2,162.3 grams and 1,783.7 grams respectively of methamphetamine. A mobile telephone registered to Kathy Herbert, Appellant's mother, tracked the packages through UPS's tracking service. Ultimately, the packages were seized and provided the basis for count two of the amended indictment, attempted possession of drugs, for which Appellant was acquitted at trial.

{¶5}   Roughly four months later on August 18, 2021, Cassandra Williams ("Williams"), who is employed by UPS as security personnel, telephoned Belmont County Sheriff's Office Deputy Dustin Hilderbrand ("Deputy Hilderbrand"), to report the receipt by UPS of two suspicious packages. Deputy Hilderbrand was off-duty, and as the UPS facility is outside of the jurisdiction of the Belmont County Sheriff's Department, Hilderbrand contacted Steubenville Police Department Detective and JCDTF member Thomas Ellis ("Detective Ellis").

{¶6}   Relevant to the above-captioned appeal, the sender of one of the packages was identified as "George Millan" with a return address in California. The recipient of the package was "Lewis Harris" at "1112 Park Street" in Steubenville, Ohio. UPS's computer system flagged the package due to previous illegal activity at the delivery address.

{¶7}   Williams testified that she was in transit between the Mansfield, Ohio facility and the Brilliant, Ohio facility where the suspicious package was located, when UPS personnel in Brilliant opened the exterior packaging at 9:26 a.m. UPS employees in Brilliant sent photographs of the package to Williams via her mobile telephone and informed her the contents of the package were "heavily wrapped." Williams instructed the UPS employees to "stop the progress" so she could "contact the law." (11/9/21 Hrg. Tr., p. 26.)

{¶8}   The UPS employees opened the package pursuant to a customer waiver in UPS's "Terms and Conditions of Ground Service." The relevant section, captioned "Right of Inspection," reads "UPS reserves the right to open and inspect any package tendered to it for transportation." (*Id.* at p. 27.)

{¶9}   Detective Ellis arrived at the UPS facility in Brilliant, then waited for Williams to arrive. When Williams arrived, she asked Detective Ellis, "[i]n front of us, can you

please open [the interior packaging]." At the hearing on the motion to suppress, Williams explained, "[b]ecause at that point, [I am] not trained to – on that type of – of what to expect. I [did not] know if it was fentanyl. I just [did not] know what was in that package." (*Id.* at p. 29.) Williams further testified she was not trained to handle fentanyl.

**{¶10}** The state inquired, "[s]o your request – at that point, the box has been opened by UPS officials – is to ask the officer to go ahead and remove the rest of what is covering [the contents]?" Williams responded, "Yes."

**{¶11}** Detective Ellis testified the inner packaging was "pretty thick" and "it took a while to get through." (*Id.* at p. 71.) According to Detective Ellis, the contents were heavily wrapped with plastic wrap, on which there was an oily substance. Inside the plastic wrap, the contents were in a blue tote, surrounded by packing peanuts. Detective Ellis opined the oily substance was intended to deter a drug-sniffing dog.

**{¶12}** Detective Ellis further testified that "once [he] was able to get through the [inner] packaging, [he] made an incision into the package where [he] observed – it was a compacted, hard, rock crystallized substance." The substance field-tested positive for methamphetamine.

**{¶13}** Williams telephoned Deputy Hilderbrand, who traveled to the UPS facility. Deputy Hilderbrand conducted a search for the recipient's name in the Accurint database and found no results. Ellis did a search for the recipient's name and address in the local Steubenville Police Department database, which likewise returned no results. As a consequence, Detective Ellis and Deputy Hilderbrand decided to perform a controlled delivery of the package.

**{¶14}** At this point, Detective Ellis took possession of the package and transported it to the Drug Task Force office. Once there, Detective Ellis, Deputy Hilderbrand, and JCDTF officers removed the majority of the presumptive methamphetamine (3,988.01 grams +/- .10 grams according to a lab report admitted at trial) and substituted it with rock salt, to prevent the replaced portion of the presumptive drug from being released into the public if the package was lost during the controlled delivery. The combination of rock salt and 440.88 grams +/- .10 grams of methamphetamine were then repackaged in the box to resemble the original package. A GPS monitor was placed in the box. Hilderbrand

donned a UPS delivery uniform and delivered the package to the front porch of 1112 Park Street.

{¶15} JCDTF officers conducted surveillance directly across the street from 1112 Park Street and after fifteen or twenty minutes, a black Honda arrived in front of the residence. The passenger, later identified as co-defendant Deon'bre Anderson-Bailey, retrieved the package from the porch. JCDTF officers then followed the vehicle from 1112 Park Street to 1300 Oregon Avenue, where Appellant, who was driving the automobile, exited the vehicle and entered the residence. Shortly thereafter, Anderson-Bailey, with the package in hand, exited the vehicle and entered the residence.

{¶16} Appellant was in his early thirties during the commission of the crime. Anderson-Bailey was nineteen years of age. Detective Ellis testified that it is "very common" in the illegal drug trade for a drug dealer to relegate the actual handling of the product to a younger associate. (Trial Tr., p. 330.) Detective Jason Turner provided similar testimony, explaining "if we stop a vehicle, usually, the younger adults or younger person in the vehicle is usually handed stuff by the older individual. They know [they are] getting lesser time or they [will not] get in as much trouble." (*Id.*, p. 385.)

{¶17} Approximately five to eight minutes later, law enforcement breached the door of 1300 Oregon Avenue. Anderson-Bailey and Appellant were both detained. Detective Ellis observed the exterior box open on a dining room table. Upon examination, Detective Ellis observed the methamphetamine and rock salt were no longer in the exterior box and the GPS monitor was on a coffee stand next to the dining room table.

{¶18} The methamphetamine and rock salt were found in the back yard, having been discarded through a bathroom window. Neither Detective Ellis nor Detective Turner saw Appellant with the package in his actual possession during their surveillance. The package of methamphetamine is the basis for count one of the amended indictment, for which Appellant was found guilty.

{¶19} After Appellant and Anderson-Bailey were secured, and while officers remained at the residence, Detective Ellis prepared a search warrant for 1300 Oregon Avenue, 1096 Claire Avenue, and the package, which was signed by a municipal judge. During this process, officers stood outside 1096 Claire Avenue and 1300 Oregon Avenue.

**{¶20}** In addition to the package and the discarded contents, the search at 1300 Oregon Avenue yielded firearms, vinyl gloves, empty baggies, and another package sent from Compton, California to "Pancho Villa" at 1300 Oregon Avenue from "Luis Garcia." None of the seized items were tested for fingerprints or DNA.

**{¶21}** A search of Appellant's person yielded his identification and the California identification card of an individual named Patrick Lee Thomas, whose nickname was "Mafia." A copy of the UPS receipt for the package was found on Appellant's mobile telephone.

**{¶22}** After searching 1300 Oregon Avenue, JCDTF officers executed the search warrant at Appellant's residence at 1096 Claire Avenue. The search yielded baggies, vinyl gloves, a digital scale, razor blades, dry cleaning, mail, a credit card bearing Appellant's name, and three firearms inside the furnace.

**{¶23}** One of those firearms, a Glock pistol, is the basis for count three of the amended indictment, having weapons while under disability, for which Appellant was acquitted. The location of the firearms in the furnace provided the basis for count four of the amended indictment, tampering with evidence, which was dismissed by the trial court pursuant to Crim. R. 29 at the close of the state's case.

**{¶24}** Appellant was arrested and taken to the Jefferson County Jail. While housed at the jail awaiting trial, Appellant engaged in several recorded telephone conversations with an individual named Courtney Pipo ("Pipo"), which were admitted into evidence. During one of the jail calls, Appellant tells Pipo to "[g]et in touch with Mafia and tell him to clean Cali up." (Trial Tr., p. 272.)

**{¶25}** At trial, Pipo testified she contacted Mafia, but she did not understand the message. Detective Ellis testified the phrase means "the narcotics was [sic] taken off and to clean it up with [California]." (*Id.* at 272-273.) The state inquired, "[b]ecause at that point, somebody had shipped four kilos of meth here, and [law enforcement] now had it?" Detective Ellis responded, "Yes, and somebody lost a lot of money." (*Id.* at 273.)

**{¶26}** After listening to several of the recorded calls, Detective Ellis interviewed Pipo. With Pipo's consent, Detective Ellis searched her apartment and found cash in the amount of $9,650 hidden in an ottoman, along with other alleged drug paraphernalia. The

cash provides the basis for the forfeiture specification accompanying count one of the amended indictment.

**{¶27}** After the jury returned their verdicts, the trial court imposed a mandatory minimum sentence of eleven years and a mandatory maximum sentence of sixteen-and-a-half years. This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

### IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO OVERRULE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

**{¶28}** Appellant filed a motion to suppress alleging the warrantless search and seizure of the original package sent to the Park Street address violated the Fourth Amendment. Appellant also challenged the attachment of the GPS tracker to the modified package prior to its delivery to the Park Street address.

**{¶29}** The Fourth Amendment imposes a reasonableness standard on the exercise of discretion by government officials. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 12, citing *Delaware v. Prouse*, 440 U.S. 648, 653-654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1990). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* citing *Prouse* at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660.

**{¶30}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, 961 N.E.2d 223, ¶ 12 (7th Dist.). "It has long been held that first-class mail such as letters and sealed packages subject to letter postage * * * is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970).

**{¶31}** In order for a search or seizure to be lawful, there must be probable cause to believe evidence of criminal activity will be found and the search or seizure must be executed pursuant to a warrant, unless an exception to the warrant requirement exists. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 33. In Ohio, there are seven recognized exceptions to the warrant requirement: (1) a search incident to a lawful arrest; (2) consent; (3) the stop-and-frisk doctrine; (4) hot pursuit; (5) probable cause plus the presence of exigent circumstances; (6) the plain view doctrine; and (7) administrative searches. *State v. McGee*, 2013-Ohio-4165, 996 N.E.2d 1048, ¶ 17 (7th Dist.), citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985). In order to qualify under the plain view exception, the state must demonstrate: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *State v. Williams*, 55 Ohio St.2d 82, 85, 377 N.E.2d 1013, 1016 (1978), holding modified by *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925 (1986).

**{¶32}** A motion to suppress presents mixed issues of law and fact. *State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's factual findings if they are supported by competent credible evidence, but "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

**{¶33}** At the outset, we must consider the threshold issue of Appellant's standing. In order for Appellant to establish that he had standing to challenge the search of the package, he must show that: (1) "[he] manifested a subjective expectation of privacy in the object of the challenged search;" and (2) "society [is] willing to recognize that expectation as reasonable." *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

**{¶34}** Appellant cites *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir.1992) for the proposition that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. The state argues standing was not

addressed by the Fifth Circuit in *Villarreal,* becuase the opinion does not contain the word "standing." Nonetheless, the *Villarreal* Court applies the "legitimate expectation of privacy" standard in the opinion, which is the federal test for standing.

{¶35} Appellant's reliance on *Villarreal* is misplaced as the holding has been limited to fact patterns where the fictitious name on the package is an established alias. *See United States v. Rose*, 3 F.4th 722 (4th Cir. 2021); *United States v. Lozano*, 623 F.3d 1055, 1064 (9th Cir. 2010) (O'Scannlain, J., concurring) ("In addition, even if [defendant] had claimed to be the rightful recipient, the Fifth Circuit line of cases involves defendants who had publicly-established connections to their alter ego."); *United States v. Goldsmith*, 432 F. Supp. 2d 161, 170-73 (D. Mass. 2006); *People v. Lombardo*, 216 Mich. App. 500, 508-09, 549 N.W.2d 596, 599-600 (1996). There is no evidence in the record "Lewis Harris" was an alias associated with Appellant.

{¶36} The limitation of the holding in *Villarreal* is consistent with the opinions of the United States Court of Appeals for the Sixth Circuit and the Sixth District Court of Appeals, which have found a defendant asserting a subjective expectation of privacy in a package must show that he either sent the package or that the package was addressed to him. *See United States v. Ligon*, 861 Fed.Appx. 612, 620 (6th Cir. 2021) (defendant "could not have had any subjective expectation of privacy in the packages because he did not send them and they were not addressed to him personally"); *see also State v. Jordan*, 2021-Ohio-4402, 181 N.E.3d 1229, ¶ 37 (6th Dist.).

{¶37} The facts in *Ligon* are virtually identical to the facts in the above-captioned appeal. After intercepting a suspicious package, which bore the names of a fictitious sender and recipient and was determined to contain fentanyl pills, law enforcement repackaged candy resembling the pills, along with a transmitter, and delivered the package. Ligon appeared at the delivery address approximately thirty minutes later, entered the residence, then exited with the package. When the transmitter notified law enforcement that the package had been opened, Ligon was apprehended.

{¶38} Here, Appellant was neither the named sender nor the named recipient of the package. Accordingly, we find Appellant could not have a subjective expectation of privacy because he did not send the package nor was it addressed to him. Even assuming arguendo that Appellant had a subjective expectation of privacy in the package,

we find society is unwilling to recognize Appellant's expectation as legitimate, insofar as it involves wrongful conduct, that is, the use of a false name in furtherance of a criminal scheme. Our conclusion that Appellant does not have standing to assert a Fourth Amendment challenge applies to both the original package and the modified package with the GPS tracker. Accordingly, we find Appellant lacks standing to challenge the admission of the contents of the package into evidence.

**{¶39}** Even assuming arguendo Appellant had standing to challenge the search, we find that law enforcement was merely assisting Williams, a private citizen, who had no training with respect to handling fentanyl. Generally, unlawful searches and seizures conducted by private individuals are outside constitutional protection because the Fourth Amendment protects individuals from state action, not a private action. *State v. Morris*, 42 Ohio St.2d 307, 316, 329 N.E.2d 85 (1975). "The mere fact that evidence found and obtained during a search by a private person is ultimately turned over to the police does not destroy the private nature of the search and render it official government action subject to the exclusionary rule." *State v. Ellis*, 2d Dist. Greene No. 05CA78, 2006-Ohio-1588, ¶ 14.

**{¶40}** However, when law enforcement becomes involved in a private individual's search, the probable-cause and warrant requirements of the Fourth Amendment may apply; thus courts must look to the level of police involvement to determine whether it was a private search or an unreasonable police search. *Morris* at 316, 329 N.E.2d 85. *State v. Willis*, 169 Ohio App.3d 364, 2006-Ohio-5754, 862 N.E.2d 906, ¶ 28 (2nd Dist.).

**{¶41}** "Official participation in the planning or implementation of a private person's efforts to secure evidence may taint the operation sufficiently as to require suppression of the evidence. The test of government participation is whether under all the circumstances the private individual must be regarded as an agent or instrument of the state. [*State v.*] *Dillon* [(Jan. 23, 1991), Miami App. No. 90-CA-07, 1991 WL 6347]; Katz, Ohio Arrest, Search and Seizure (2005), Section 27:12 at p. 604." *Ellis* at ¶ 14. Although the state usually bears the burden of proving that an exception to the warrant requirement exists when a warrantless search has occurred, the defendant bears the burden of proving that there was "sufficient governmental involvement in seemingly private conduct"

to consider it a state search. *State v. Jedd*, 146 Ohio App.3d 167, 171-172, 765 N.E.2d 880 (4th Dist. 2001).

**{¶42}** In determining whether the search was the result of state or private action, courts "have paid particular attention to whether or not the search in question was initiated by a private person and for private purposes." *Willis* at ¶ 30; *Dillon*, *supra*; *State v. Knapp*, 9th Dist. Wayne No. 00CA0073, 2001 WL 773230 (July 11, 2001). Further, it is not enough that the police are present; "[t]here must be some evidence that police directed private persons where and how to search and what to look for." *Ellis* at ¶ 16. In other words, there must be "a great deal of entanglement" between the conduct of the private individual and the police before the search can be considered state action. *State v. Cook*, 149 Ohio App.3d 422, 2002-Ohio-4812, 777 N.E.2d 882, ¶11 (2nd Dist.).

**{¶43}** In *Morris*, *supra*, a suspicious person checked a suitcase at the baggage room of a railroad terminal, and even though the room was designed for temporary storage, the bag was left there for days. Railroad employees examined the bag, which heightened their suspicion, so they contacted the police. The employees believed they had the right to open the bag to protect the company, even though it was not company policy to open bags. The following day, the police cut the lock and an employee opened the suitcase and discovered a number of cellophane bags containing white powder. The police, upon discovering what they thought were narcotics, ordered a field test and subsequently seized the contraband.

**{¶44}** The Ohio Supreme Court upheld the search, concluding the police were not significantly involved in the search so as to implicate Morris's Fourth Amendment rights. More specifically, the *Morris* Court held, "the minimal police participation which did occur was done for purposes of protection of the public safety and not with the intent of gathering evidence to be used in a criminal prosecution or otherwise evading constitutional protections," and as such, "the search was a private undertaking for purposes of the Fourth Amendment to the United States Constitution, and contraband evidence, thereby coming within the 'plain view' of police officers having a legitimate right to be present, is not subject to exclusion at trial under the Fourth Amendment." *Morris* at paragraph two of the syllabus.

{¶45} The same is true here. Williams had the authority to open the package based on UPS's terms and conditions of ground service. Williams's uncontroverted testimony establishes she contacted law enforcement and she requested assistance in the physical opening of the interior package due to her concern that it might contain fentanyl. Insofar as law enforcement had a legitimate right to be present in place of Williams based on concern for public safety, we find the methamphetamine was within the plain view of law enforcement and no Fourth Amendment violation occurred.

{¶46} Contrary to Appellant's argument, the facts in this case are distinguishable from the fact in *State v. Archer*, 197 Ohio App.3d 570, 2011-Ohio-5471, 968 N.E.2d 495, ¶ 22 (7th Dist.). In that case, Archer challenged the warrantless search of a storage unit. We held that law enforcement's presence was proper at first, but became "so entangled, the search lost its private nature and * * * was subject to Fourth Amendment protection." *Id.* at ¶ 2.

{¶47} Following a series of robberies of other storage units, an employee of the facility suspected the perpetrator was the most recent lessee, Archer. The employee had the authority to enter the suspect's storage unit based on a waiver in the executed lease agreement. He then called the police. Once the lock on Archer's storage unit was removed, the deputy dispatched to the scene offered the use of his camera to inventory the contents of the unit and he participated in the search. At some point, the deputy smelled marijuana and began moving boxes in the unit until he found the drug. As a consequence, he conducted a search of the entire storage unit.

{¶48} We first recognized that the "plain smell" doctrine established probable cause to search the storage unit, but did not excuse the warrantless search. We further found there were no exigent circumstances and no threat to public safety, and as a consequence, the deputy should have secured the storage unit and remained on site until a warrant could be procured.

{¶49} The facts in this appeal are distinguishable from the facts in *Archer.* Law enforcement's participation in the search was essential to the protection of Williams and the UPS employees. Consequently, the initial intrusion which afforded the authorities the plain view was lawful. The discovery of the methamphetamine was inadvertent and its

Case No. 23 JE 0001

incriminating nature immediately apparent. Unlike the facts in *Archer*, the warrantless search at issue in this appeal ended with the discovery of the methamphetamine.

**{¶50}** Crim. R. 41, captioned "Search and seizure," reads in relevant part:

(A) Authority to Issue Warrant. Upon the request of a prosecuting attorney or a law enforcement officer:

* * *

(2) A tracking device warrant authorized by this rule may be issued by a judge of a court of record to install a tracking device within the court's territorial jurisdiction. The warrant may authorize use of the device to track the movement of a person or property within or outside of the court's territorial jurisdiction, or both.

* * *

(C) Issuance and Contents

(1) * * * In the case of a tracking device warrant, the affidavit shall name or describe the person to be tracked or particularly describe the property to be tracked, and state substantially the offense in relation thereto, state the factual basis for the affiant's belief that the tracking will yield evidence of the offense. * * *

**{¶51}** Appellant argues the methamphetamine should have been suppressed based on the state's violation of the criminal rule. However, the trial court correctly opined that the package was not subject to the requirements of Crim. R. 41 after law enforcement determined the package contained contraband. The repackaged methamphetamine in this appeal is distinct from a privately-owned automobile or a suitcase or package with unknown contents.

**{¶52}** For the foregoing reasons, we find the trial court did not err in overruling the motion to suppress. We further find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**APPELLANT'S CONVICTION FOR POSSESSION OF METHAMPHETAMINE IN AN AMOUNT GREATER THAN 300 GRAMS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶53}** Appellant argues the greater weight of the evidence demonstrates that Appellant did not knowingly possess methamphetamine. Appellant reasons it was Anderson-Bailey who retrieved the drugs from 1112 Park Street and carried them into 1300 Oregon Avenue. Shortly after Anderson-Bailey and Appellant walked into 1300 Oregon Avenue, law enforcement raided the residence and no officer testified that he saw Appellant in actual possession of the drugs.

**{¶54}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It is not a question of mathematics, but depends on the effect of the evidence in inducing belief*. Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390, 678 N.E.2d 541 (Cook, J. concurring). The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins* at 387. This discretionary power of the appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶55}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The jurors are free to believe some, all, or none of each witness's

testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, the reviewing court should not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶56}** The jury convicted Appellant of possession of drugs in violation of R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Pursuant to R.C. 2925.01(K), to "possess" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶57}** In the context of drug offenses, "possession" may be either actual possession or constructive possession. *State v. Carter*, 7th Dist. Jefferson No. 97-JE-24, 2000 WL 748140, *4 (May 30, 2000). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

**{¶58}** R.C. 2901.22, captioned "Culpable mental states," defines "knowingly" as follows: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

**{¶59}** Appellant argues "[t]here is no evidence in the record that [Appellant] subjectively believed that, by driving Anderson-Bailey to the Park Street address and by entering the 1300 Oregon address (which was not owned by him and in which he did not reside), he would be coming into contact with the seized narcotics, nor any evidence that he *should have known* what was inside the box." (Appellant's Brf., p. 28.)

**{¶60}** The foregoing argument ignores several relevant facts in evidence. First, the receipt for the shipment was found on Appellant's mobile telephone. Further, among his belongings, law enforcement found the California identification card for Patrick Lee Thomas, aka "Mafia." During telephone calls between Appellant and Pipo while Appellant

was awaiting trial, Appellant told Pipo to "[g]et in touch with Mafia and tell him to clean Cali up." (Trial Tr., p. 272.) Detective Ellis testified the phrase means "the narcotics was [sic] taken off and to clean it up with [California]." (*Id.* at 272-273.) The state inquired, "[b]ecause at that point, somebody had shipped four kilos of meth here, and [law enforcement] now had it?" Detective Ellis responded, "Yes, and somebody lost a lot of money." (*Id.* at 273.) Finally, Detective Ellis, who had investigated drug crimes for over twenty years, testified it is commonplace for a drug dealer to relegate the actual possession of drugs to a younger associate.

**{¶61}** We find the jury could have credited the foregoing testimony and concluded Appellant had constructive possession of the drugs. Accordingly, we further find Appellant's second assignment of error has no merit.

**{¶62}** Because Appellant challenges his trial counsel's failure to object to certain evidence in his third assignment of error, and he challenges various evidentiary rulings in his fourth assignment of error, the two assignments are addressed together for judicial economy and ease of analysis.

## ASSIGNMENT OF ERROR NO. 3

## APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

## ASSIGNMENT OF ERROR NO. 4

## THE TRIAL COURT ERRONEOUSLY ADMITTED INADMISSIBLE EVIDENCE AND EXCLUDED RELEVANT EVIDENCE OVER APPELLANT'S OBJECTION, RESULTING IN PREJUDICE TO THE APPELLANT.

**{¶63}** "[T]he Sixth Amendment right to counsel exists 'in order to protect the fundamental right to a fair trial.' " *Lockhart v. Fretwell*, 506 U.S. 364, 368, 122 L.Ed.2d 180, 113 S.Ct. 838 (1993), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment's guarantee of the right to counsel "is the right to the effective assistance of counsel." *State v. Bradley,* 42 Ohio St.3d 136, 150, 538 N.E.2d 373 (1989).

**{¶64}** The test for an ineffective assistance of counsel claim is two-part: whether trial counsel's performance was deficient and whether the deficiency resulted in prejudice to the defendant. *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland* at 691; *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107.

**{¶65}** In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Lyons*, 7th Dist. Belmont No. 14 BE 28, 2015-Ohio-3325, ¶ 11, citing *Strickland* at 694; see also *Bradley* at paragraph three of the syllabus. The appellant must affirmatively prove that the alleged prejudice occurred. *Strickland* at 693.

**{¶66}** The admission of evidence lies within the broad discretion of the trial court. *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Thus, a reviewing court will not disturb evidentiary decisions of the trial court absent an abuse of discretion that has created material prejudice. *Id.*

**{¶67}** If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Evid.R. 701. The opinion of a layperson uses a reasoning process familiar in everyday life, as opposed to the opinion of an expert using a reasoning process that is mastered by a specialist in the field. *State v. Baker*, 2020-Ohio-7023, 166 N.E.3d 601, ¶ 34 (7th Dist.), citing *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 56.

**{¶68}** Nonetheless, where a police officer provides an opinion, we have held the testimony may qualify as a lay witness opinion rather than an expert opinion, even though it is based on a particular officer's knowledge and experience. *State v. Rydarowicz*, 2023-Ohio-916, 210 N.E.3d 1133, ¶ 56 (7th Dist.), citing *Baker*, *supra,* at ¶ 34 (detective's knowledge of cellular phone tower and GPS technology); *see also Johnson*, *supra*, at ¶ 57, 62 (officer's opinion on whether defendant's tattoos were gang-related). The Ohio Supreme Court has previously allowed a lay witness to express his opinions in areas in

which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. For instance, in *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001), the Ohio Supreme Court concluded a lay opinion based on personal knowledge and experience can fall within Evid.R. 701 on a subject outside the realm of common knowledge. *Id.* at 296-297 (a drug user can identify drugs if the proper foundation is laid).

**{¶69}** Appellant first argues Ellis's testimony regarding the actual amount of methamphetamine contained in the modified package delivered to 1112 Park Street was inexact, ranging from 466 grams at the hearing on the motion to suppress to 441 grams at Anderson-Bailey's trial. A laboratory report from the Bureau of Criminal Investigation ("BCI") admitted into evidence at trial established a weight of 440.8 grams +/- .10 grams. Although Ellis's testimony was not the same at each hearing, the amount was always greater than 300 grams and was not so overstated as to cause prejudice to Appellant.

**{¶70}** Next, Appellant argues the testimony of Steubenville Police Officer Jason Hanlin regarding "cocaine-based paraphernalia" found in Appellant's residence was prejudicial, as the drug counts referred only to methamphetamine. While the testimony at issue related largely to the processing and sale of cocaine, Officer Hanlin testified methamphetamine and cocaine share similar physical qualities, such that the paraphernalia found in his home, i.e. plastic bags, could also be attributed to the processing and sale of methamphetamine.

**{¶71}** Third, Appellant argues Detective Ellis's testimony that Detective Brian Bissett checked the water department records in order to determine whether "Lewis Harris" resided at the Park Street address constituted hearsay. However, Detective Bissett provided the identical testimony at trial regarding his role in the investigation.

**{¶72}** Fourth, Appellant argues Detective Ellis's testimony regarding BCI's policy for fingerprint testing was hearsay. Detective Ellis testified that BCI is backlogged and does not undertake fingerprint testing on every piece of evidence in a case. He further testified that a package that traveled from California to Jefferson County would likely contain numerous fingerprints. The foregoing testimony was predicated upon Detective Ellis's twenty-year career in law enforcement and did not result in prejudice to Appellant.

**{¶73}** Fifth, Appellant contends Detective Ellis's interpretation of Appellant's "clean it up with Cali" statement to Pipo constitutes speculation. He advances the same

argument with respect to Detective Ellis's interpretation of Appellant's instruction to Pipo to keep her mobile telephone camera pointed toward the ceiling when she filmed the personal property she moved from his residence to her residence. Detective Ellis observed that Appellant told Pipo to point the camera toward the ceiling in order to prevent law enforcement from intercepting the footage and using it to locate the personal property. Based on Detective Ellis's twenty-year career, we find that his interpretation of Appellant's statement was not speculative.

**{¶74}** Sixth, Appellant argues a specific telephone call from Appellant to Pipo that was played for the jury was not relevant and was highly prejudicial. During the telephone call, Appellant stated that he wished the investigating officers had daughters so he could "get them pregnant." (*Id.*, p. 289.)

**{¶75}** Clearly, the foregoing statement has no probative value regarding the commission of the charged crimes. However, based on other evidence offered at trial that clearly establishes Appellant's guilt, we find the admission of the telephone conversation did not result in outcome-determinative prejudice. The conclusion that Appellant did not suffer unfair prejudice as a result of the admission of the telephone conversation is evident from the fact that the jury acquitted Appellant of the weapon under disability charge and the tampering with evidence charge.

**{¶76}** Seventh, Appellant asserts the testimony of the investigating officers that younger participants in the drug trade are often responsible for handling the product was speculative. However, both Detective Ellis and Officer Hanlin offered their observations based upon decades of experience in drug interdiction.

**{¶77}** Eighth, Appellant alleges the admission of a videotaped jail call from Appellant to Pipo, in which Pipo told Appellant that neighbors who live in the residence next to Appellant on Claire Avenue "want drugs" was prejudicial. Appellant writes, "Appellant was not on trial for trafficking, and the drugs were not shipped to 1096 Claire Avenue." However, the evidence was offered to prove the attempted possession of drugs charge based on the methamphetamine that was sent to the 1096 Claire Avenue address, but confiscated prior to delivery. Appellant was ultimately acquitted on the second count of the amended indictment. Nonetheless, the videotaped jail call was relevant to the attempted possession of drugs charge.

**{¶78}** Finally, Appellant argues he should have been permitted to offer evidence at trial that Anderson-Bailey had been charged and ultimately acquitted of possession of drugs and having a weapon under disability "after the [Anderson-Bailey] jury heard identical evidence in his case." (Appellant's Brf., p. 34.) Appellant cites no legal authority for this claim.

**{¶79}** A "co-defendant's acquittal cannot be used as evidence of an accused's innocence." *State v. Hinzman*, 8th Dist. Cuyahoga No. 92767, 2010-Ohio-771, ¶ 27, citing *State v. Tutt*, 12th Dist. Warren No. CA85-09-056, 1986 WL 4506 (Apr. 12, 1986). "A codefendant's conviction can no more be used as evidence against an accused as a codefendant's acquittal could be used by the accused as evidence of his innocence." *Tutt* at *8 (finding co-defendant's acquittal irrelevant and inadmissible under Evid.R. 402).

**{¶80}** Of equal import in this case, the evidence connecting Appellant to the methamphetamine, that is, the UPS receipt on his mobile telephone, his possession of Patrick Lee Thomas's California ID card, and his post-arrest communications with Pipo, does not implicate Anderson-Bailey. As a consequence, we find Appellant and Anderson-Bailey are not similarly-situated rendering Anderson-Bailey's acquittal irrelevant and inadmissible.

**{¶81}** Having reviewed Appellant's challenges to the evidence offered at trial, we find that he suffered no prejudice as a result of the trial court's evidentiary rulings. Accordingly, we further find Appellant's third and fourth assignments of error have no merit.

## CONCLUSION

**{¶82}** For the foregoing reasons, Appellant's conviction and the judgment entry overruling Appellant's motion to suppress evidence are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 23 JE 0001

[Cite as *State v. Herbert*, 2023-Ohio-4490.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**